IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05CR171-LSC |
| | ) | |
| CALVIN ARTIS STEWART, JR. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is pending on a Motion to Suppress Statement, filed by the defendant, Calvin Artis Stewart, Jr. ["Stewart"], on 20 October 2005 (Doc. # 19). The government responded to the motion on 27 October 2005 (Doc. # 22). Stewart contends that the statement(s) he gave to Hayneville, Alabama police officers on 18 March 2005, after he requested an attorney, should be suppressed.

The court conducted an evidentiary hearing on 22 November 2005 (Doc. # 29). Upon consideration of the motion, the response, and the evidence received at the hearing, and for good cause, the Magistrate Judge recommends that the motion be denied.

**I.   FACTS**

On 18 March 2005, Ray Simmons ["Simmons"], a Lowndes County bus driver, notified the Hayneville Police Department that "three black males in a green bluish" vehicle had run through a bus stop sign (TR. 3). Shortly thereafter, Calvin Mitchell ["Chief Mitchell"], Chief of the Hayneville, Alabama police department, was advised of the call, and he and another officer, Merritt, responded by going to the area where school children were

being transported (TR. 4). Mitchell stated that it was his department's policy to pursue persons who violated traffic ordinances (TR. 16).

Mitchell and Merritt passed Simmons' school bus, and as they proceeded through a residential area, they saw "a vehicle fitting that description and noticed that it was occupied by three black males" (TR. 5). When they began pursuing the vehicle, activating their emergency lights, the vehicle pulled to the side of the roadway (TR. 5). Mitchell approached the vehicle and asked the driver, defendant Stewart, to produce his driver's license (TR. 5).[1]

When Stewart rolled his window down "approximately two or three inches", Mitchell "smelled the odor of burning marijuana illuminating [sic] from the vehicle" (TR. 6). At that time, Simmons approached the scene on his bus, pointed to the men and identified the vehicle as the one "that ran the bus stop sign" (TR. 6). Mitchell advised Stewart that he stopped him to "give him a verbal warning"; he warned Stewart "not to run the stop sign when the children were exiting and entering the bus" (TR. 6).

Stewart, who seemed nervous to Mitchell,[2] then began speaking in "a very high pitch", asking the officer to call his "Mama", "call [his] lawyer", "call anybody." (TR. 6). Mitchell told him to "calm down" and repeated the reason why he stopped Stewart; as he spoke,

---

[1] Mitchell did not know Stewart. Although he had seen Stewart's mother before, he did not know her name (TR. 22). He did know the other two passengers in the vehicle, and he knew that they were convicted felons (TR. 23).

[2] Mitchell testified that Stewart's "hands were trembling" and that "[his] voice went to a very high pitch" (TR. 8).

2

Mitchell made other observations that caused him concern:

> At that time once again I smelled the burning marijuana and I noticed two open containers of beer, Coronas, with the front seat passenger having one between his legs and the back seat passenger having one between his laps [sic].

(TR. 7).

Mitchell advised the front seat passenger to exit the vehicle to be patted down by Merritt "for safety" ); Merritt complied and placed the man in handcuffs (TR. 7).[3] Mitchell then advised Stewart to exit the vehicle, patted him down, and in the process and found "in the very small of his back . . . A hard object consistent with that of a weapon" (TR. 7). He lifted Stewart's shirt to reveal a pistol, he placed Stewart in handcuffs and told him to "sit directly behind [him in the patrol car]: (TR. 8). In response to Mitchell's inquiry about a pistol permit, Stewart told him that he did not have one.

Mitchell then arrested him for carrying a pistol without a permit and read his Miranda rights to him (TR. 9).[4] Stewart advised Mitchell that he understood his rights (TR. 10-11). Mitchell then asked him if any of the items in his vehicle belong to him; Stewart responded that they did (TR. 10). Thereafter, Stewart's Mother came to the scene, asked why her son was going to jail, and was permitted to speak with him (TR. 11-12).

---

[3] Merritt later transported the other two males to the Lowndes County Detention Facility (TR. 12). They were charged with violating Alabama's open container law (TR. 20).

[4] Mitchell said that the Miranda rights "advised [Stewart] of his right to an attorney and if he wanted to answer questions he could, if he did not no questions would be asked of him until he was represented by an attorney" (TR. 10). Stewart was not charged with driving under the influence or with any other drug-related offense (TR. 18).

Mitchell waited at the scene for a wrecker service and for additional officers(TR. 13). Later that evening, he referred the case to a drug task force agent, Hudson, and surrendered the evidence to him (TR. 13). According to Mitchell, Hudson later took a statement from Stewart, during which time Stewart signed a waiver of counsel which was witnessed by Mitchell (TR. 15). Mitchell stated that Stewart did not ask for an attorney during any of the time that he was in custody (TR. 15); nor did he ask for an attorney after he was transported to the jail (TR. 20).

## II.    DISCUSSION

Stewart challenges his field statement acknowledging that he owned the pistol and that he did not have a permit to carry it. He also challenges the written statement taken on the evening of 18 March 2005 (TR. 24). Although the written statement and Stewart's signed waiver of counsel are a part of the record in this case (and attached to this Recommendation), the government's counsel read the text of the statement into the record at the evidentiary hearing (TR. 25).

Stewart argues that his request to "call my lawyer" was a request for counsel that should have been honored by the officers, i.e., the officers should have refrained from questioning him further. Stewart specifically argues that "once in custody and the request for counsel is made, this request must be scrupulously honored" (TR. 26). The government specifically argues that "no request for an attorney was made after [Stewart] was placed into custody" (TR. 27).

4

A.  *Burden of Proof*

*Miranda* warnings are necessary prior to a custodial police interrogation. When a defendant challenges the admissibility of a statement in a motion to suppress, however, "the burden of showing admissibility rests, of course, on the prosecution." ***Brown v. Illinois***, 422 U.S. 590, 604, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975). The prosecution bears the burden of proving, at least by a preponderance of the evidence, the *Miranda* waiver, ***Colorado v. Connelly***, 479 U.S. 157, 169, 93 L. Ed. 2d 473, 107 S. Ct. 515 (1986), and the voluntariness of the confession, ***Lego* v. *Twomey***, 404 U.S. 477, 489, 30 L. Ed. 2d 618, 92 S. Ct. 619 (1972).

B.  *The Interrogation at the Vehicular Stop*

When a suspect clearly asserts his right to have counsel present during custodial interrogation, law enforcement officers must immediately cease questioning the suspect. ***Edwards* v. *Arizona***, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981). The government argues, *inter alia*, that Stewart's entreaty to "call my lawyer" was not interpreted by Mitchell as a serious request for counsel. The more pivotal question, however, is whether Stewart was in custody at the time he made his first statements, i.e., (1) that he did not have a permit for the pistol, and (2) that the items in the vehicle (narcotics) belonged to him, thus triggering the Fifth Amendment.

**1.     The Non-Custodial Statement Regarding the Pistol**

The undisputed evidence demonstrates that Stewart acknowledged that he did not have a pistol permit before he was arrested and before Mitchell read him his *Miranda* rights. Thus, at the time he made the statement regarding the pistol, he was clearly being detained, but he was not in custody. It is not detention that triggers Miranda; rather it is custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1966).

The evidence establishes that the sole purpose of Mitchell's stop was to warn Stewart "not to run the stop sign when the children were exiting and entering the bus" (TR. 6). There is no evidence that he intended to arrest Stewart or place him in custody for the traffic violation. Indeed, under long-standing Alabama law, an officer of the law may not make an arrest without a warrant for a misdemeanor, or for a violation of a town ordinance not committed in his presence. *Ezzell v. State*, 13 Ala. App. 156, 68 So. 578 (1915). Thus, Mitchell was not even empowered to arrest Stewart because he did not witness the defendant's traffic infraction.

Mitchell's inquiry about the gun constituted "general questioning". Although *Miranda* warnings must precede any custodial interrogation, "[g]eneral 'on-the-scene questioning,' however, concerning the facts and circumstances surrounding a crime or other general questioning of citizens during the fact-finding process do not trigger *Miranda* warnings. *Miranda*, 384 U.S. at 477-78; *Garcia v. Singletary*, 13 1487 1489 (11th Cir. 1994).

Moreover, Stewart was not in custody when he acknowledged ownership of the pistol. A custodial interrogation "occurs whenever law enforcement officers question a person after

taking that person into custody or otherwise significantly deprive [sic] a person of freedom of action." *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612.

Prior to his arrest, and during general questioning, Stewart's statements were not the result of custodial interrogation.[5] Thus, his motion to suppress the statement regarding the pistol should be denied.

### 2.    The Custodial Statement Regarding the Drugs

Unequivocally, after arresting Stewart for carrying a pistol without a permit, and after reading him his Miranda rights from a card, Steward acknowledged that he understood his rights (TR. 9-10).  Mitchell then asked him if the drugs in the vehicle belonged to him, and Stewart replied that they did.  The defendant insists that his pre-arrest request to "call [his]

---

[5]The court is not suggesting that a suspect must be actually arrested before he can be deemed to be in custody.  Under certain circumstances, it may be necessary for officers to give Miranda warnings to a person who is not under arrest, if there is a restraint on freedom of movement "of the degree associated with a formal arrest." *Minnesota v. Murphy*, 465 U.S. 420, 430, reh'g denied, 466 U.S. 945 (1984).  To determine whether such restraint is present, the court uses an objective test in which "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984); *United States v. Muegge*, 225 F.3d 1267, 1270 (11th Cir. 2000). Applying the objective test to the instant facts, the court finds that Stewart was not so restrained.  Mitchell expressly advised him that he merely wanted to warn him, and even though Mitchell clearly formed the intent, upon smelling the marijuana, to investigate the presence of drugs in the vehicle, the fact that an investigation has focused on a suspect does not necessarily trigger the need for *Miranda* warnings. *See United States v. Phillips*, 812 F.2d 1355, 1360 (11th Cir.1987).

lawyer" should prohibit the introduction of that statement.

Again, one of the critical issues is whether Stewart was in custody after his arrest. Custodial interrogation occurs when a suspect's "freedom of action is curtailed [by the police] to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 441 (1984). "In determining whether a suspect is in custody [for *Miranda* purposes], 'the ultimate inquiry is simply "whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121(1983).

Because he was under arrest at the time he made the statement about the drugs, Stewart was clearly in custody. "The government may not introduce statements stemming from a custodial interrogation unless it can show that the suspect was given the familiar Miranda warnings". *United States v. Lavalle*, 2004 U.S. Dist. LEXIS 3478 (M. D. Ala. 2004) (citing *United States v. Jones*, 32 F.3d 1512, 1516 (11th Cir. 1994). In this case, Stewart does not dispute that Mitchell read the defendant his rights immediately upon arresting him. The only other inquiry is whether Stewart's post-arrest, in-custody admission was voluntary.

A defendant's confession may be used against him in a criminal proceeding when the confession is made voluntarily. For statements to be admissible, the defendant must both voluntarily and knowingly waive his rights. *Moran v. Burbine*, 475 U.S. 412, 421(1986); *Miranda*, *supra*, 384 U.S. at 444 (waiver must be made "voluntarily, knowingly and intelligently"). The standard of voluntariness for a Miranda waiver is the same as that for the voluntariness of a confession under the Fifth Amendment. *Colorado v. Connelly*, 479 U.S.

8

157, 169-70, (1986).

In spite of the fact that Stewart was in custody following his arrest, the evidence established that his statement regarding the contents of the vehicle was voluntary. Indeed, Stewart apparently answered the question about the drugs willingly.

> The determination of whether a statement is voluntary depends on whether, under all of the surrounding circumstances, the statement was the product of the accused's free and rational choice. [*United States v.]Jones*, 32 F.3d at 1516.

**United States v. Lavalle**, **supra**. Mitchell did not threaten Stewart, and Stewart was "very cooperative the whole time" (TR. 11).

Stewart argues that his earlier request to "call my mother, call my attorney, call anybody", as a request for an attorney (TR. 19). Neither does the court. The evidence, which Stewart did not refute, established that he was indeed crying out as a reaction to having been stopped by the officer. It is also significant that Stewart did not repeat his entreaty, even after he was arrested. The court's conclusion should not be construed to require more than one or several requests for counsel are required. The court finds, however, that Stewart's request to call his lawyer before he was in custody has not been held to apply to his later, custodial interrogation.

Moreover, because Stewart did not request a lawyer during custodial interrogation, his statement regarding the drugs is admissible against him. The Fifth Amendment requires that, when a person requests an attorney during a custodial interrogation, all questioning must cease until an attorney is present. *Miranda,* 384 U.S. at 474, 86 S. Ct. at 1628; **Edwards v.**

9

*Arizona*, 451 U.S. 477, 484 (1981); ***United States v. Johnson***, 812 F.2d 1329, 1331 (11th Cir.1986).  See also ***Owen v. Alabama***, 849 F.2d 536, 538 (11th Cir. 1988).

Accordingly, Stewart's motion to suppress his statement regarding the drugs should be denied.

### C.   *The Custodial Interrogation at the Police Station*

If, after ***Miranda*** warnings are given, the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.   ***Miranda***, 384 U.S at  475.  The court should not assume that a defendant has waived his Miranda rights merely because officers obtained a confession.

> The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

***Carnley v. Cochran***, 369 U.S. 506, 516 (1962).

Mitchell testified that, although he did not re-advise Stewart of his Miranda rights at the police station, he was present when Officer LaShaun Hudson did so (TR. 15).  Mitchell also witnessed Stewart's signature on the waiver (TR. 15).  Finally, Mitchell stated   -  without dispute -   that after Hudson read the Miranda warnings to Stewart, Stewart did not request an attorney (TR. 15).   Government's counsel read the signed statement into the

record; its last sentence was: "I gave the statement of my own free will". It is also significant that Stewart was not threatened in any way; nor were any promises made to him to induce him to make a statement (TR. 15).

Stewart does not contend that his statement to Hudson should be suppressed because of anything that occurred after his arrest. He relies solely on his pre-custody request to Mitchell to "call my Mama, call my lawyer, call anybody". Because the court has already determined that this statement was not a request for counsel made pursuant to Miranda warnings, and the statement or request was not made while Stewart was in custody, the court finds that the government has met its burden of demonstrating that Stewart knowingly and voluntarily waived his rights. This finding is consistent with the Supreme Court's holding in *Miranda* that the Fifth Amendment privilege against compulsory self-incrimination applies only in the context of custodial interrogation. *Miranda*, at 444; ***Purvis v. Dugger***, 932 F.2d 1413, 1418 (11th Cir. 1991). In fact, the warnings, and their companion phenomena - waiver, request for counsel, voluntariness - apply only when the individual is in custody." ***United States v. Torkington***, 874 F.2d 1441, 1445 (11th Cir. 1989).

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Stewart's Motion To Suppress Statements be DENIED.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or

before 30 January 2006. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. **Nettles v. Wainwright**, 677 F.2d 404 (5th Cir. 1982). *See* **Stein v. Reynolds Securities, Inc.**, 667 F.2d 33 (11th Cir. 1982). *See also* **Bonner v. City of Prichard**, 661 F.2d 1206 (11th Cir. 1981, *en banc*).

DONE this 20th day of January, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE